RECEIVED
DEPARTMENT OF LAW
AUG 10 2000
OFFICE OF SPECIAL PROSECUTIONS AND APPEALS
ANCHORAGE, ALASKA

IN THE SUPREME COURT FOR THE STATE OF ALASKA

| | |
|---|---|
| JOHN W. BERGE III, ) | |
| Petitioner, ) | S-8911 |
| ) | |
| vs. ) | Supreme Court No. S-_____ |
| ) | |
| STATE OF ALASKA, ) | |
| ) | Court of Appeals No. A-7142 |
| Respondent. ) | Superior Court No. 1KE-97-1085 CR |

## PETITION For HEARING

It is indeed ironic, following the Term in which Chief Justice Rehnquist, writing for a majority of seven, reaffirmed that the advice and waiver requirements of <u>Miranda v. Arizona</u> are "constitutional rule[s]," that here the intermediate appellate court[1] diluted the first rule, and deleted the second. <u>Dickerson v. U.S.</u>, 120 S.Ct. 2326, 2336 (2000). <u>See</u> Section I, <u>infra</u>.

The IAC also ducked an important question of first impression in Alaska -- whether the right to counsel attaches at the time a Felony Complaint is filed -- by extending its forfeiture principle to an unprecedented degree. <u>See</u> Section II, <u>infra</u>.

Finally, the IAC wholly ignored this Court's repeated decisions finding reversible plain error where the prosecution introduces evidence, and makes advocatory use, of an accused's pre-trial assertion of his right to silence. <u>See</u> Section III, <u>infra</u>.

For any, or all, of these reasons, petitioner asks this Court to reverse the IAC's decision, to vacate his convictions, and to remand his case for a new trial.

---

[1] For ease of reference, "the intermediate appellate court" shall hereinafter be referred to as "the IAC." Citations to its opinion in this case will be to "[Op.___]."

JAMES H. McCOMAS
Attorney at Law
Of Counsel to Friedman, Rubin & White
1227 West 9th Avenue, Second Floor, Anchorage, Alaska 99501
(907) 258-0704

Ex. B, p. 1

## STATEMENT Of RELEVANT FACTS

The badly decomposed body of Ernie Taylor was found floating next to his log-float in Dall Bay on August 27, 1997. (Tr. 212-15) The initial autopsy found the cause of death to be drowning. (Tr. 188-89) A later autopsy revealed bullet wounds and fragments in the decedent. (Tr. 138, 141-57)

On September 8, 1997, "Froggy" Bob Dickerson told the troopers that petitioner was making comments to him about having killed Taylor. (Tr. 221) AST Inv. McPherron obtained a <u>Glass</u> warrant. On September 10, McPherron succeeded in surreptitiously recording a conversation between "Froggy" Bob and petitioner, in which petitioner "confessed" to killing Taylor. (Tr. 222-29; RE 89-99)

On September 14, 1998, Inv. McPherron filed a Felony Complaint charging petitioner with first-degree murder, and obtained a warrant for his arrest. (RE 1 & 2; Tr. 24, 55) Later that morning, McPherron and Anchorage AST Inv. Seigfried stopped, frisked, questioned, and arrested petitioner. Prior to trial, petitioner moved to suppress the results of the post-charging trooper questioning, relying on both <u>Miranda</u> and right to counsel grounds. The trial judge denied the motion. (RE 66-69) A tape-recording of the troopers' interrogation, which included two separate assertions by petitioner of his right to silence/cut-off questioning, was admitted at trial. (Tr. 237-39; RE 100-08).

Petitioner was indicted for Murder-1, Theft-2 of Taylor's shotgun, and Tampering, for disposing of "the weapon he used to shoot" Taylor and the shotgun, neither of which was recovered. (RE 4-5)

JAMES H. McCOMAS
Attorney at Law
Of Counsel to Friedman, Rubin & White
1227 West 9th Avenue, Second Floor, Anchorage, Alaska 99501
(907) 258-0704

The state's case depended on its efforts to corroborate petitioner's confession. No independent evidence was introduced which specifically connected <u>petitioner</u> to the crime. No fingerprint evidence was presented. No trace evidence at the scene was connected to petitioner. No trace evidence on petitioner or his boat-residence was connected to the scene. Neither physical evidence nor witness testimony was introduced putting him in possession of any of the items purportedly stolen from Taylor's float-house or boat. No evidence put petitioner in possession of a .30 caliber Marlin rifle -- the only weapon capable of inflicting the wounds Taylor suffered.

Petitioner took the stand in his own defense. He testified that he neither shot, nor killed, Taylor, and denied stealing anything from him. (Tr. 540, 557-58, 589-90, 590-91) He testified that his only rifle was an old Sears .222, which he sold before he ever met Taylor. (Tr. 547) Petitioner denied seeing Taylor again after he stopped staying with him in June. (Tr. 548) The defense offered evidence to corroborate petitioner's testimonial repudiation of the confession, and showed material inconsistencies between what he "confessed" and what had demonstrably occurred.[2]

Petitioner also testified he and "Froggy" Bob started drinking and telling stories together. He described their conversations as a "braggadocious" game of "one-upsmanship." (Tr. 552) Petitioner kept telling the "same stupid story" to "Froggy" Bob, including on the wired conversation, which Bob facilitated by pouring him plenty of Bailey's Irish Creme liquor. (Tr. 556-57, 588) As the dramatic climax of his cross-

---

[2] Four specific examples of petitioner "confessing" to impossible events are documented in Appellant's Opening Brief, at 43-44 & nn.14-16.

- 3 -

Ex. B, p. 3

examination of petitioner, the prosecutor twice confronted him with his prior assertions of his right to silence/cut-off questioning. (Tr. 592-93)

The jury deliberated on April 28-29, 1998. As demonstrated by the notes sent during deliberations, this jury appreciated that the case had two plausible sides. (RE 77-83) In response to their final request, the jury reheard petitioner's own testimony. (RE 83) Unfortunately, his testimonial credibility had been undermined during trial by the series of constitutional violations discussed below. Several hours after hearing these errors repeated in the replay of his testimony, the jury returned guilty verdicts on all counts.

JAMES H. McCOMAS
Attorney at Law
Of Counsel to Friedman, Rubin & White
1227 West 9th Avenue, Second Floor, Anchorage, Alaska 99501
(907) 258-0704

## I.

## PETITIONER's STATEMENT To The TROOPERS WAS OBTAINED In VIOLATION Of MIRANDA.

For 33 years, the law has been clear -- the results of custodial interrogation are inadmissible, unless the suspect (1) is advised of, and (2) validly waives, his rights to silence, to counsel/court-appointed counsel, and to cut-off questioning at any time, and is told his answers can, and will, be used against him. Miranda v. Arizona, 384 U.S. 436 (1966). Accord Dickerson v. U.S., 120 S.Ct. 2326 (2000).

### A. Petitioner Was Subjected To Custodial Interrogation.

Petitioner was in custody when questioned by the troopers. [Op., 6]

### B. The Warning Was Inadequate.

Although he purportedly advised petitioner of his rights twice, Inv. McPherron never advised him of his right to "decide at any time to exercise these rights and not to answer any questions or make any statement." State v. Cassell, 602 P.2d 410, 412 n.4

(Alaska 1979). (RE 102) Failure to advise a suspect of the substance of <u>any</u> of his rights renders statements inadmissible. <u>McMahan v. State</u>, 617 P.2d 494, 496-97 (Alaska 1980); <u>Cassell</u>, 602 P.2d, 416-19; <u>Miranda</u>, 384 U.S. 473.

The IAC suggests that the troopers didn't have to advise petitioner of his right to cut-off questioning, because his later conduct showed he already knew he had that right. [Op., 7] However, the primary function of the <u>Miranda</u> requirement is not educational -- nearly all American adults know they have a constitutional right to silence. <u>Miranda</u>'s protective warning and waiver device is intended as "an absolute prerequisite in overcoming the inherent pressures of the interrogation atmosphere." 384 U.S., 468. The <u>Miranda</u> Court explicitly rejected the IAC's claim that violations can be excused by proof that the suspect already knew his rights. 384 U.S., 468-69.

### C. <u>Interrogation Was Not Preceded By Any Waiver</u>.

Here, the troopers **never even asked** petitioner if he would waive his rights. Instead, Inv. McPherron read the rights card and asked him, "Do you understand everything I just read to you?" (RE 102) Apparently, petitioner did not; he asked McPherron to "read it again." (<u>Id</u>.) McPherron re-read the rights card, but this time failed even to ask if petitioner understood it. McPherron and petitioner both said, "Okay." (RE 103) **Neither trooper asked if petitioner was willing to waive his rights.** (Tr. 43-44) Instead, Inv. Siegfried simply resumed his interrogation. (<u>Id</u>.)

In context, petitioner's "Okay" most naturally appears to be an answer to the pending question -- "Do you understand everything I just read to you?" (RE 102) Even respondent acknowledged that petitioner's "Okay" did not create a sufficient record upon

<div style="margin-left: 2em; font-size: small;">
JAMES H. McCOMAS<br>
Attorney at Law<br>
Of Counsel to Friedman, Rubin & White<br>
1227 West 9th Avenue, Second Floor, Anchorage, Alaska 99501<br>
(907) 258-0704
</div>

- 5 -

Ex. B, p. 5

which to rest a finding of waiver, and urged the IAC to remand the case to the trial judge if it found the interrogation to be custodial. (Appellee's Br., 19 n.2) The IAC, however, imbued that single word with additional meaning. It gleaned from "Okay" not only petitioner's agreement that he understood his rights, but also the wholly unsolicited assertion that he desired to waive them -- something the troopers had not even asked him to do. [Op., 7-8] In so over-extending itself to find a waiver, any waiver, the IAC clearly and egregiously violated the long-settled law controlling the waiver of <u>Miranda</u> rights.

The IAC's waiver stretch was squarely rejected in <u>Miranda</u> itself -- "[A] valid waiver will not be presumed simply from the fact that a confession was in fact eventually obtained." <u>Miranda</u>, 384 U.S., 475. "'Presuming waiver from a silent record is impermissible. The record must show... that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything else is not a waiver.'" <u>Miranda</u>, 384 U.S., 475, quoting <u>Carnley v. Cochran</u>, 369 U.S. 506, 516 (1962).

This Court "must 'indulge every reasonable presumption against waiver.'" <u>Giacomazzi v. State</u>, 633 P.2d 218, 222 (Alaska 1981), quoting <u>Brewer v. Williams</u>, 430 U.S. 387, 404 (1977). The state, alone, bears the "heavy burden" of affirmatively proving waiver. <u>Miranda</u>, 384 U.S., 475.

This record does not establish that petitioner waived his rights, and the trial court never suggested it did. There is no way that the word "Okay," said in response to a question about understanding one's rights, constitutes a waiver of those rights in the absence of even a request that a waiver be given. Indulging every reasonable presumption

JAMES H. McCOMAS
Attorney at Law
Of Counsel to Friedman, Rubin & White
1227 West 9th Avenue, Second Floor, Anchorage, Alaska 99501
(907) 258-0704

against waiver, as the law commands, here, there was no waiver at all. <u>Alili v. State</u>, 670 P.2d 713, 716 (Alaska App. 1983). Thus, petitioner's statement had to be suppressed.

### D. Discretionary Review Is Warranted By App. Rs. 304(a)-(c).

The holding that police need not advise suspects of the right to cut-off questioning directly conflicts with <u>Cassell</u>, 602 P.2d, 412 n.4, warranting review under App. R. 304(a).

The IAC's holding, that police failure to advise a suspect of <u>Miranda</u> rights can be excused if the record shows the suspect already knew his rights, directly conflicts with <u>Miranda</u>, 384 U.S., 468-69, and constitutes an erroneous resolution of a significant legal question of substantial public importance and of first impression in Alaska, warranting review under App.Rs. 304(a), (b) & (c).

The IAC's postulation of waiver from an ambiguous, single word response to a question about whether petitioner understood his rights directly conflicts with Supreme Court authority, and constitutes an erroneous resolution of a significant legal question of substantial public importance and of first impression in Alaska, warranting review under App.Rs. 304(a), (b) & (c). <u>See</u> <u>Brewer</u>, 430 U.S. 387, 404 (1977); <u>Miranda</u>, 384 U.S., 475; <u>Carnley</u>, 369 U.S., 516; <u>Giacomazzi v. State</u>, 633 P.2d 218, 222 (Alaska 1981).

### II.

### PETITIONER's STATEMENT To The TROOPERS WAS OBTAINED In VIOLATION Of HIS RIGHT To COUNSEL.

### A. The IAC's Extended Forfeiture Principle Goes Too Far.

In addition to his <u>Miranda</u> claim, petitioner argued that his federal and/or state constitutional rights to counsel attached with the filing of the Felony Complaint, and that

JAMES H. McCOMAS
Attorney at Law
Of Counsel to Friedman, Rubin & White
1227 West 9th Avenue, Second Floor, Anchorage, Alaska 99501
(907) 258-0704

- 7 -

Ex. B, p. 7

his subsequent interrogation violated those rights. This issue has not been resolved as a matter of federal law by the U.S. Supreme Court, nor by this Court. See Appellant's Opening Br., 18-21. The IAC ducked this issue, holding that petitioner <u>forfeited</u> his right to counsel claim, even though he pled and litigated it in the trial court. [Op., 8]

Petitioner plainly raised the right to counsel issue in his pleadings. (RE 21-23 (Motion to Dismiss/Suppress); 62-63 (Reply)) Although the trial judge did not specifically address every asserted ground in his written Order, he did clearly rule that "the motion to dismiss and suppress is denied." (RE 69) Obviously, if the trial judge had written or said nothing more than "the motion to dismiss and suppress is denied," all issues raised therein would be preserved for appeal. But, the IAC held that, because the trial judge chose to write specifically about some issues and not others, an automatic and conclusive presumption arises that he neither considered, nor ruled against, the other grounds. The much more obvious inference is that he did reject all grounds -- and therefore denied the motion -- but chose specifically to write about only the issues requiring further explanation.

The IAC asserts forfeiture results unless the accused "press[es] the [trial] court for a ruling on an <u>issue</u>..." [Op., 8 (emphasis added)] But as the very authority it cites holds, it is the <u>motion</u> for relief, not every specific supporting ground, which must be ruled on in order to preserve the underlying issues for appeal. Forfeiture results when appellants fail to obtain a ruling granting or denying their <u>motions</u> -- their <u>requests for relief</u> -- not on every underlying "issue."[3] Here, the motion to suppress was explicitly denied. (RE 69)

---

[3] See, e.g., <u>Marino v. State</u>, 934 P.2d 1321, 1327 (Alaska App. 1997) (discovery motion); <u>Erickson v. State</u>, 824 P.2d 725, 733 (Alaska App. 1991) (suppression motion); <u>Jonas v.</u>

A judge's failure specifically to address every issue raised in a motion has never -- until now -- been deemed to cause forfeiture, so long as he actually rules on the motion. If permitted to stand, this new forfeiture rule will impose a horrendous burden on trial judges, requiring them to write or speak on each and every sub-issue in every motion. Alternatively, it may deter trial judges from writing or saying anything specific, thus depriving the parties and reviewing courts of insight into the trial court's reasoning, since a simple, blanket denial of a motion will implicitly preserve all of its component parts.

### B. Discretionary Review Is Warranted By App. Rs. 304(a)-(c).

The new rule that forfeiture results unless a trial judge explicitly addresses every "issue" implicated by a motion directly contradicts the IAC's own cases, and constitutes an erroneous resolution of a significant legal question of substantial public importance and of first impression in Alaska, warranting review under App.Rs. 304(a), (b) & (c).

### III.

### EVIDENCE Of / COMMENT On PETITIONER's EXERCISE Of HIS RIGHT To SILENCE WAS PLAIN ERROR.

The IAC acknowledges that, during trooper interrogation, petitioner twice asserted his rights to silence and to cut-off questioning. Indeed, the court relies on this fact in propping up its adequate advice/valid waiver claims. [Op., 7 & 8] The court further acknowledges that evidence of these assertions of rights was introduced during the state's case-in-chief. [Op., 10-

---

State, 773 P.2d 960, 963 (Alaska App. 1989) (motion for psychiatric examination). Accord Thomas v. State, 391 P.2d 18, 20 (Alaska 1964) (mistrial motion).

- 9 -

13] Significantly, however, the IAC wholly ignores the fact that the prosecutor emphasized petitioner's assertions of rights in undermining his credibility during cross-examination --

> Q: Okay. Do you remember them saying, quote, we'd love to hear your story, unquote?
>
> A: Yes, I do.
>
> Q: All right. **And your statement was, quote, I told you all I have to say, that's all I have to say, unquote?**
>
> A: That's right.
>
> Q: Okay. **You didn't say anything about I just made up a big bunch of BS to get Dickerson, did you?**
>
> \* \* \* \* \*
>
> Q: Okay. And the troopers were saying we're being fair with you, aren't we; we're trying to get the truth out, right; we're being fair aren't you [sic]; **and you said, quote, I told you all I have to say; that's all I have to say?**
>
> A: That's right...

(Tr. 592-93) (emphasis added).

Alaska Criminal Rule 47(b) empowers this Court to recognize and correct plain errors in the trial court. Plain error is found when (1) the error affects a substantial right, (2) the error should be obvious to counsel and the court, and (3) obvious or substantial prejudice results. See Raphael v. State, 994 P.2d 1004, 1015-16 (Alaska 2000); Covington v. State, 711 P.2d 1183, 1184-85 (Alaska App. 1985).

Given the number of times this Court has found **reversible plain error** from the introduction of evidence/comment on an accused's assertion of constitutional rights, the first two elements are clearly met as a matter of law. See, e.g., Dorman v. State, 622 P.2d 448, 456-59 (Alaska 1981); Padget v. State, 590 P.2d 432, 434-35 (Alaska 1979); Bargas v.

JAMES H. McCOMAS
Attorney at Law
Of Counsel to Friedman, Rubin & White
1227 West 9th Avenue, Second Floor, Anchorage, Alaska 99501
(907) 258-0704

State, 489 P.2d 130, 132-34 (Alaska 1971). See also Doyle v. Ohio, 426 U.S. 610 (1976); Silvernail v. State, 777 P.2d 1169, 1176 (Alaska App. 1989). Certainly, the substantiality of the accused's constitutional rights has not diminished, and the obviousness of the error has only increased with each succeeding appellate declaration.

The third element is also easily shown. The toxic effect of such evidence/comment is obvious. Jurors naturally infer from an accused's assertion of his rights to cut-off questioning and to silence that he has something to hide. They make the powerful, and natural, inference that the accused's actions demonstrate his consciousness of guilt. That is exactly why the prosecutor saved this tactic as the grand finale for his cross-examination. (Tr. 592-93) He hammered petitioner for asserting his rights, and invited the jury to infer that the tall-tale claim was a fabrication, since he exercised his rights instead of saying he was B.S.ing "Froggy" Bob. (Id.) This was a direct, improper attack on petitioner's testimonial credibility, in a case where his credibility was crucial to the outcome.

The present case is virtually identical to this Court's decision in Gunnerud v. State, 611 P.2d 69, 75-76 (Alaska 1980). In Gunnerud, the prosecution played a tape-recording made of the execution of a search warrant. A portion of the tape included the accused's post-warning assertion of her right to silence. This Court observed, "It is well settled that prosecutorial comment on silence for substantive or impeachment value is constitutionally prohibited." Gunnerud, 611 P.2d, 75. Although the evidence against her was "strong," it was "not overwhelming." 611, P.2d 76. Given that her own testimony, if believed, could exculpate her, the Court held that introduction of this evidence was reversible error. Id.

JAMES H. McCOMAS
Attorney at Law
Of Counsel to Friedman, Rubin & White
1227 West 9th Avenue, Second Floor, Anchorage, Alaska 99501
(907) 258-0704

- 11 -

Ex. B, p. 11

Ignoring the real components of plain error analysis and this Court's prior, controlling plain error reversals on this very issue, the IAC refused to find plain error by hypothesizing a "tactical" decision by trial counsel. (Op., 14) Significantly, <u>not even respondent</u> offered such a lame excuse for affirmance in its Brief. There is, of course, **no support** for the IAC's "tactical" fantasy in any statement by trial counsel anywhere in the record, and that deficiency is fatal to the ICA's "tactical" claim. In <u>Raphael v. State</u>, 994 P.2d 1004, 1015-16 (Alaska 2000), this Court rejected reliance on the "tactical" exception to the plain error rule, because the record there failed to establish that trial counsel "had a sufficiently accurate view of the scope of the error, and deliberately chose to waive any objection." The record here is no better than in <u>Raphael</u>. Indeed, having paid the enormous price of letting improper inferences be drawn from his client's assertions of the right to silence, trial counsel, by the IAC's "logic," **entirely abandoned the tactic**, and failed to even to mention the purported desirable inference in his opening statement or final argument to the jury.

Moreover, all of the purported tactical advantage could be gained, and none of the prejudice suffered, by stopping the recording immediately <u>before</u> petitioner's first assertion of the right to silence. By then the troopers had already "made repeated efforts to get [petitioner] to admit" presence and participation, and "suggested that [he] might have killed Taylor by accident, or in self-defense[, or in response to] aggressive homosexual overtures…" [Op., 14] Petitioner's "steadfast[] declar[ations]" of innocence in response had already occurred, and were memorialized on the tape. [<u>Id</u>.] There was nothing

tactically to gain, and only unfair prejudice to generate, by allowing admission of petitioner's two assertions of silence before the jury.

Finally, even if a fabricated "tactic" could somehow excuse introduction of the tape, trial counsel had **no conceivable tactical justification** for letting the prosecutor denigrate petitioner's credibility on the stand by cross-examining him on his assertions of rights. The IAC ignores this point. By his cross-examination, the prosecutor directly urged the jury to disbelieve -- and then convict -- petitioner, <u>because</u> he relied on his right to silence.

"The obviousness of the error committed in this case, the ease with which it could have been avoided, and the fundamental nature or the rights which it affected are all factors that weigh heavily in favor of a finding of plain error." <u>Van Hatten v. State</u>, 666 P.2d 1047, 1057 (Alaska App. 1983).[4] Here, unlike in <u>Van Hatten</u>, there are no mitigating circumstances. This is reversible plain error, and this Court should say so. <u>See</u> <u>Dorman</u>, 622 P.2d, 456-59; <u>Padget</u>, 590 P.2d, 434-35; <u>Bargas</u>, 489 P.2d, 132-34; <u>Silvernail</u>, 777 P.2d, 1174-79. <u>See also</u> <u>Gunnerud</u>, 611 P.2d, 76; <u>Reynolds v. State</u>, 706 P.2d 708, 709-10 (Alaska App. 1985); <u>Nighswonger v. State</u>, 662 P.2d 445, 449 (Alaska App. 1983).

---

[4] <u>Van Hatten v. State</u>, 666 P.2d 1047, 1055-57 (Alaska App. 1983), relied on by respondent and ignored by the IAC, presents a useful comparison to the present case. In <u>Van Hatten</u>, the IAC found "the question of plain error [to be] extremely close." Ultimately, no plain error was found, because (1) no comment was made regarding the assertion of rights, (2) the only reference was a single sentence in an officer's testimony, and (3) the prosecutor did not elicit the improper evidence, the witness volunteered it.

Here, by contrast, the <u>Van Hatten</u> factors all cut in favor of finding plain error. First, the prosecutor's use of petitioner's assertions in cross-examining him constituted a clear and direct comment on his rights. Second, instead of a single reference, the jury heard two occasions on which petitioner asserted his rights, and then the forceful reiteration of both instances during cross-examination. Third, the prosecutor deliberately elicited the evidence, by introducing it and emphasizing it as the climax of his cross of petitioner.

JAMES H. McCOMAS
Attorney at Law
Of Counsel to Friedman, Rubin & White
1227 West 9th Avenue, Second Floor, Anchorage, Alaska 99501
(907) 258-0704

### B. Discretionary Review Is Warranted By App. R. 304(a).

The IAC's holding on this issue directly conflicts with numerous prior decisions of this Court, finding reversible error when the state makes evidentiary and/or advocatory use of an accused's prior assertion of his constitutional rights, and thus warrants review under App.R. 304(a). See Dorman, 622 P.2d, 456-59; Gunnerud, 611 P.2d, 76; Padget, 590 P.2d, 434-35; Bargas, 489 P.2d, 132-34.

### PRAYER For RELIEF

For any and/or all of the foregoing reasons, petitioner asks this Court to reverse the judgment of the IAC and the judgments of conviction entered against him in the trial court, and to remand his case to the trial court for a new trial.

Dated at Anchorage, Alaska, this 9th day of August, 2000.

RESPECTFULLY SUBMITTED,
JOHN W. BERGE III,
Petitioner,
JAMES H. McCOMAS,
Attorney At Law

_____
JAMES H. McCOMAS
Alaska Bar # 8810170

**Certificate Of Service**
I certify that a copy of the foregoing Petition For Hearing was served by messenger on the Office Of Special Prosecutions & Appeals, attn. Nancy R. Simel, this 9th day of August, 2000.

JAMES H. McCOMAS
Attorney at Law
Of Counsel to Friedman, Rubin & White
1227 West 9th Avenue, Second Floor, Anchorage, Alaska 99501
(907) 258-0704