# UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

JOHN W. BERGE, III,

       Petitioner,

vs.

MARK ANTRIM,

       Respondent.

Case No. 3:05-cv-00290-RRB-DMS

**FINAL REPORT AND RECOMMENDATION REGARDING THE MERITS OF THE PETITION FOR HABEAS CORPUS [DOCKET 72]**

## I.  PETITION PRESENTED

This Court has Petitioner John W. Berge III's petition for habeas corpus pursuant to 28 U.S.C. § 2254 before it.  Pro se, Berge filed a petition for federal habeas relief on December 12, 2005.  (Doc. 1).  Having been appointed counsel, Berge filed an amended petition on June 5, 2006.  (Doc. 23).  Out of ten claims presented in the amended petition, rather than contest their exhaustion, Berge withdrew two, (Doc. 55 at 4-5); eight were found to be exhausted in state court and ordered to be briefed on the merits, (Doc. 70).

Prior to seeking federal habeas relief, Berge was convicted of first-degree murder for shooting and killing Ernest Taylor, second-degree theft for stealing Taylor's shotgun and tampering with evidence for concealing the shotgun and firearm used to kill Taylor.  Berge v. State, Nos. A-7142, 4254, 2000 WL 1058955, at *1 (Alaska App. Aug. 2, 2000) (Berge I).  The Court of Appeals for the State of Alaska affirmed Berge's convictions in an unpublished memorandum decision.  Id.  Berge petitioned the Alaska Supreme Court for review of that decision on August 9, 2000.  The Alaska Supreme Court denied the petition. (Doc. 68).  Berge then filed an application for post-conviction relief alleging ineffective assistance of counsel at his

trial. <u>Berge v. State</u>, No. A-8683, 2005 WL 901779, at *1 (Alaska App. Apr. 20, 2005) (<u>Berge II</u>). The Superior Court dismissed the application and Berge appealed to the Court of Appeals. <u>Id.</u> The Court of Appeals affirmed the dismissal in an unpublished memorandum decision. <u>Id.</u> Berge sought review of the Court of Appeals decision in a pro se application to the Alaska Supreme Court that was subsequently denied. (Doc. 46, Ex. 5).

The remaining eight claims on the merits have been renumbered 1-8: (1) that he was in custody when the troopers talked to him and therefore he should have been read his <u>Miranda</u>[1] warnings, and based on this purported violation his statement should have been suppressed, (Doc. 23 at 9); (2) that he received inadequate <u>Miranda</u> warnings, (Doc. 23 at 14); (3) that he did not waive his <u>Miranda</u> rights, (Doc. 23 at 15); (4) that his Sixth Amendment right to counsel arose when the complaint was filed against him and precluded the police from talking with him without counsel, (Doc. 23 at 9, 16); (5) that he had not waived his right to counsel before he talked to the police, (Doc. 23 at 18); (6) that the prosecutor at trial illegally commented on the fact that Berge exercised his right to remain silent, (Doc. 23, at 20-21, 34); (7) that his trial counsel was ineffective for not filing a motion to suppress Berge's statements that were recorded pursuant to a warrant, (Doc. 23, at 4); and (8) that his trial counsel was ineffective for not obtaining a ruling on a motion to suppress that was based on Berge's right-to-counsel argument, (Doc. 23, at 4).

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, (1966).

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. DISCOVERY OF THE CRIMES[2]

Susan Dotson and Michael Horwath had last seen Ernest "Ernie" Taylor about July 14, 1997 at Taylor's float house in Dall Bay outside of Ketchikan. Berge I, 2000 WL 1058955, at *1. Taylor was expected to appear in town three days later but failed to do so. Id. Dotson returned to Dall Bay and noticed that Taylor's skiff was tied up in an unusual way, that items of Taylor's personal property were missing, and that there was no sign of Taylor or his dog. Id. Dotson and Horwath reported Taylor missing on August 8, 1997. Id.

A day after Dotson's report, a trooper confirmed that neither Taylor nor his dog were around Dall Bay and that there was no sign of recent activity at Taylor's float house. Id. On August 25, a trooper stopped in Dall Bay and found Taylor's decomposing body floating in the water. Id. On August 26, an autopsy was performed. Id. Several wounds were thought to be worm holes. Id. No foul play was suspected; Taylor's cause of death was concluded to be an accidental drowning. Id.

On August 27, Trooper Randall L. McPherron, aided by Dotson and Horwath, inventoried Taylor's property and discovered that many items of Taylor's property were missing: rifles, shotguns, photo albums, clothing and crab pots. Berge II, 2005 WL 901779, at *1.

### B. BERGE'S ADMISSIONS OF GUILT

On September 8, Trooper Randall L. McPherron met with Bob Dickerson, a local resident who claimed to have information regarding the crimes surrounding Taylor's death. Berge I, 2000

---

[2] The following facts set forth have been extracted from the record as laid out by the Alaska state courts.

3

WL 1058955, at *1.  Dickerson said that he contacted the troopers when he realized that no one had found bullet holes in Taylor's body.  Id. at *1.  Dickerson informed Trooper McPherron that, prior to the discovery of Taylor's body, John W. Berge III, the Petitioner, had confided in Dickerson that he had shot and killed Taylor.  Id.  Dickerson also reported that Berge thought that Taylor's body was still in the water.  Id.  Dickerson also reported Berge claimed to have taken some guns from Taylor and subsequently to have buried these guns.  Id.

On September 9, Trooper McPherron obtained a Glass warrant[3] to monitor and record a conversation between Dickerson and Berge.  Id. at *2.  In the monitored and recorded conversation, Berge admitted that he had shot and killed Taylor and Taylor's dog.  Id.  Berge claimed that there were "four holes" in Taylor and that he killed Taylor in "self-defense."  Id.  Taylor's body was later exhumed and subjected to another autopsy.  Id.  Four entry bullet wounds were found.  Id.

## C.  THE TROOPERS' SEPTEMBER 14 INTERVIEW WITH BERGE

On September 14, Trooper McPherron obtained a warrant to arrest Berge for first-degree murder.  Id.  After getting the arrest warrant, Troopers McPherron and Oscar Siegfried, both dressed in civilian clothes, stopped Berge on the street and identified themselves as troopers.  Id.  They did not inform Berge that they had a warrant for his arrest.  Berge II, 2005 WL 901779, at *2.  They informed Berge that they were doing "follow up work" on Taylor's death.  Id.  Trooper McPherron asked if he and Siegfried could "have a little talk with" Berge to ascertain where Taylor might have been and what he may have been up to prior to his death.  Id.  McPherron then

_____

[3] State v. Glass, 583 P.2d 872, 881 (Alaska 1978) (holding that a search warrant is required for electronic monitoring of conversations).

4

asked Berge to enter an unmarked trooper van to get out of the noise of the traffic.  Berge I, 2000

WL 1058955, at *2.  Before entering the van, Siegfried patted down Berge, telling him the

procedure was routine and seizing the folding knife he found on Berge.  Id.  Berge sat in the front

passenger seat, McPherron in the driver's seat and Siegfried behind Berge.  Id.

Inside the van, the troopers asked Berge for his name, address and place of employment.

Id.  Berge responded with a brief description of how he met Taylor fishing, drank a beer with him

and that he seemed like a "really nice guy."  Id.  Berge then stated that after visiting Taylor on

and off for about three weeks he became wary of him.  Id.  He concluded that Taylor "had an act

going," "was really strange," and that he was "dangerous."  Id.  Berge said that, upon discerning

this, he "got the heck out of there" sometime in June.  Id.

Trooper Siegfried stated that Taylor's family thought some of his property was missing

and inquired if Berge had anything to do with the missing property.  Id.  The troopers then told

Berge that they were going to advise him of his rights.  Id.  They told him it was "just routine."

Id.  McPherron read Berge these warnings:

> I'll go ahead and read this to you.  You have the right to remain silent.  Anything
> you say can and will be used against you in a court of law.  You have the right to
> talk to a lawyer and have him present with you while you are being questioned.  If
> you cannot afford to hire a lawyer, one will be appointed to represent you before
> any questions if you wish.  Do you understand everything I just read to you right?

Id. at *3.  Berge requested that it be read again, to which McPherron complied.  Id.

> Read it again?  You have the right to remain silent.  Anything you say can and
> will be used against you in a court of law.  You have the right to talk to a lawyer
> and have him present with you while you are being questioned.  If you cannot
> afford to hire a lawyer, one will be appointed to represent you before any
> questioning if you wish.

Id.  Berge responded with an "[O]kay."  Id.

The troopers asked Berge several more questions which he answered.  Id.  The trooper

then told Berge that he knew he shot Taylor.  Id.  Berge responded that "I've said all I have to

say."  Id.  The troopers then raised the possibility that Berge killed Taylor in self-defense.  Id.

They asked to hear Berge's explanation of the events.  Id.  Berge responded that "I told you all I

have to say."  Id.  Siegfried asked if Berge wanted to inform the troopers of anything else.  Id.

Berge responded negatively.  Id.  McPherron then played a portion of the conversation between

Dickerson and Berge that had been record pursuant to the Glass warrant.  Id.  The troopers asked

Berge a few more questions.  Id.  Berge responded, "I've got nothing more to say.  If you're

going to charge me, charge me.  Get me a lawyer."  Id.  The troopers then ceased their

questioning and arrested Berge.  Id.

## D.  JUDICIAL PROCEEDINGS[4]

### 1.  Pre-Trial and Trial

Berge filed a pre-trial motion to suppress his statements to the troopers alleging that the

troopers violated the Miranda rule and his Sixth Amendment right to counsel.  Id.  Following a

hearing, the Superior Court judge issued a written decision denying the motion.  Id.  It was found

that the interrogation was non-custodial and that Miranda was therefore inapplicable.  Id.  It was

not decided if Berge waived his Miranda rights.  Id.  Also, Berge's Sixth Amendment claim was

not discussed in the written decision.  Id.

Three days before Berge's Superior Court trial, Berge moved for a protective order that,

in part, requested that a portion of his statements to the troopers on September 14 be barred.  Id.

---

[4] Only a brief overview of the Berge's judicial proceedings will be given to acquaint the
reader with the events.  Facts pertinent to the analysis will be detailed in the respective sections
of analysis.

at *5.  The court considered the proposed protective order during a break in jury selection.  Id.

The State announced that it did not oppose Berge's protective order and proposed that the tape

recording of Berge's statement be stopped where Berge had requested in his protective order.  Id.

Berge's trial attorney said nothing and the court directed the State to stop the tape recording

where Berge requested.  Id.  When the tape recording was offered in evidence by the State,

Berge's attorney said that his objection was the same as "had been set forth in the motion to

suppress and the evidentiary hearing and the argument."  Id.  He did not otherwise object to the

portion of the tape that was played nor did he object when the prosecutor cross-examined Berge

about his statement to the troopers that was recorded on the tape.  Id.

## 2.  Direct Appeal

In his appeal to the Court of Appeals of Alaska, Berge alleged that he was subjected to

custodial interrogation before he was arrested by the Alaska State Troopers.  Id. at *1.  Though

Berge was read his rights, he argued that the troopers' warnings were inadequate under Miranda

and that, even if adequate, that he did not waive his rights.  Id.  The Court of Appeals did not

reach the issue of whether Berge was in custody.  Assuming for purposes of entertaining the

appeal that Berge was in custody, the court noted that the warnings given to Berge satisfied the

requirements of Miranda.[5]  Id. at *3-4.  Ultimately the Court of Appeals concluded that Berge

voluntarily waived his Miranda rights and agreed to speak with the troopers after they warned

him of his rights.  Id. at *4.

Berge also appealed on the grounds that his Sixth Amendment right was violated, a claim

---

[5] He was informed that he had the right to silence, that he had to the right to counsel
before any questioning and that his statements could be used against him in court as required by
Miranda.  384 U.S. at 479, 86 S.Ct. at 1630.

that he raised alongside the <u>Miranda</u> claim in the motion to the Superior Court.  <u>Id.</u>  Berge

conceded that the Superior Court did not rule on this issue.  <u>Id.</u>  The Court of Appeals held, citing

Alaska state law precedent,[6] that because Berge did not obtain the trial court's ruling on the

claim, that the claim was forfeited.  <u>Id.</u>

 In reference to Berge's recorded statement to the troopers, Berge argued to the Court of

Appeals that he invoked his right to remain silent and admission of evidence about the exercise

of that right was reversible error.  <u>Id.</u> at *1.  The Court of Appeals said that because Berge never

objected on those grounds during trial that he must show plain error.  <u>Id.</u> at *6.  The court found

no plain error because the record did not rule out the possibility that Berge's attorney made a

tactical decision to allow the jury to hear the disputed evidence and to allow Berge to be cross-

examined regarding the statements.  <u>Id.</u> at *7.

 Berge argued to the Court of Appeals that the Superior Court erroneously instructed the

jury that self-defense was not an issue in this case.  <u>Id.</u> at *1.  The court rejected this argument.

<u>Id.</u> at *7.  In <u>Berge I</u>, the Court of Appeals affirmed the judgment of the Superior Court.  <u>Id.</u> at

*1.

### 3.  Motion for Post-Conviction Relief and Subsequent Appeal

 Following the Court of Appeals' decision of Berge's direct appeal, Berge filed a petition

for post-conviction relief, asserting that he had received ineffective assistance from his trial

attorney in ten different respects.  <u>Berge II</u>, 2005 WL 901779, at *1.  The Superior Court

ultimately concluded that none of Berge's allegations stated a prima facie case of ineffective

---

 [6] <u>Marino v. State</u>, 934 P.2d 1321, 1327 (Alaska App. 1997); <u>Erickson v. State</u>, 824 P.2d 725, 733 (Alaska App. 1991); <u>Jonas v. State</u>, 773 P.2d 960, 963 (Alaska App. 1989).

8

representation and dismissed Berge's petition.  Id.  He appealed the Superior Court decision to the Court of Appeals.  Id.  He asserted that four of his allegations of ineffective assistance were sufficiently pled to state a prima facie case.  Id.  The Court of Appeals held that Berge did not establish a prima facie case for post-conviction relief and upheld the judgment of the Superior Court.  Id. at *15.

### III.  STANDARD OF REVIEW FOR HABEAS CORPUS RELIEF

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to those cases filed after its effective date, that of April 24, 1996.  See Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997).  The substantive facts of this matter occur after that date, therefore AEDPA law is applicable.

The AEDPA allows for federal habeas relief only when the claims were adjudicated on the merits in state court proceedings and are brought by petitioners in custody pursuant to the judgment of a state court.  28 U.S.C. § 2254(d).  Habeas relief may be granted if the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id.  See Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523 (2000).

In considering a habeas corpus application, the reviewing court presumes the factual determinations of state courts to be correct.  28 U.S.C. § 2254(e)(1).  If a petitioner disagrees with the presumption of correctness he has the burden of rebutting the presumption by clear and convincing evidence.  Id.

9

In determining whether habeas relief is appropriate, the federal court must look to the last reasoned state-court decision. Van Lynn v. Farmon, 347 F.3d 735, 738 (9th Cir. 2003). When there is no reasoned decision supplied by the state court, the reviewing federal court is to conduct an "independent review of the record." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003) (citing Delgado v. Lewis, 223 F.3d 976, 981-982 (9th Cir. 2000)). Independent review is not de novo review but rather is deemed the only way to determine if a silent state-court decision is objectively unreasonable. Himes, 336 F.3d at 853. Many of the relevant statutory phrases have been defined by the Supreme Court. Knowledge of those definitions is crucial to applying the statute appropriately.

"Clearly established Federal law" refers to the holdings, not the dicta, of the Supreme Court's decisions that were in effect at the time of the relevant state-court decision. Williams, 539 U.S. at 412, 120 S.Ct. at 1523. In line with this, constitutional error may not be found because a state court's decision conflicts with the precedent of the Circuit Court of Appeals. See Arnold v. Runnels, 421 F.3d 859, 865 n.6 (9th Cir. 2005) (stating that, though Federal courts reviewing habeas petitions are not to bind state courts to Ninth Circuit precedent, the reviewing courts may look upon the precedent as persuasive authority).

A state-court decision may be "contrary to" clearly established federal law in two ways as defined by Williams. Id. at 405-06, 120 S.Ct. at 1519-20. First, the state-court decision may be contrary if the state court applied a rule that was not prescribed by the governing federal law. Id. at 405, 120 S.Ct. at 1519. Second, a state-court decision may also be contrary if the state court confronted a set of facts materially indistinguishable from a decision reached by the Supreme Court yet arrived at a different result. Id. at 406, 120 S.Ct. at 1519-20.

10

A state-court decision may be an "unreasonable application" of clearly established federal law in two ways.[7] Id. at 407, 120 S.Ct. at 1520. First, it would be an unreasonable application of federal law if a state court identified the governing legal rule but applied it to the facts unreasonably. Id. Second, a state-court decision would be an unreasonable application if the state court unreasonably extended a legal principle to a new context where it should not apply or unreasonably refused to extend a legal principle to a new context where it should apply. Id.

A determination of facts may be deemed "unreasonable" for a number of reasons. It could be unreasonable because no finding of fact was made though one should have been. Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir. 2004). A factual determination also could be unreasonable if a finding of fact was made but under an improper legal standard. Id. at 1001. A determination of facts may also be unreasonable for procedural reasons. See, id. (hypothesizing that failing to hold a hearing concerning the presentation of evidence would be unreasonable on procedural grounds if that hearing were required by law). Among the procedural pitfalls is the possibility that the state court misapprehends or misstates the record in making a finding of fact. Id. Yet another pitfall is when a court overlooks facts when making a finding, thereby leading to an unreasonable factual determination. Id.

---

[7] The Court recognizes that the term "unreasonable" is difficult to define but it points out that it is crucial to note that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams, 529 U.S. at 410, 120 S.Ct. at 1522. The key inquiry regarding unreasonableness is whether the state court's application of clearly established federal law was "objectively" unreasonable. Id. at 409, 120 S.Ct. at 1521.

Case 3:05-cv-00290-RRB   Document 124   Filed 03/30/11   Page 11 of 39

# IV.  ANALYSIS OF BERGE'S CLAIMS

## A.  INTRODUCTION

Prior to the enactment of AEDPA, federal courts entertaining a state prisoner's application for habeas relief exercised independent judgment when deciding both questions of federal law and questions of law and fact combined.  <u>Williams</u>, 529 U.S. at 400, 120 S.Ct. at 1516.  Essentially federal habeas courts owed no deference to a state court's resolution of such questions.  <u>Id.</u>  Now, under the AEDPA, as Berge's petition is, habeas relief may not be granted unless a state's adjudication of a claim resulted in a decision contrary to, or involved an unreasonable application of clearly established federal law, or was an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  Opposed to the pre-AEDPA standard of exercising independent judgment, the federal habeas court is to have a "highly deferential standard for evaluating state-court rulings."  <u>Lindh v. Murphy</u>, 521 U.S. 320, 333 n.7, 117 S.Ct. 2059, 2066 n.7 (1997).  State-court decisions are to "be given the benefit of the doubt."  <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24, 123 S.Ct. 357, 360 (2002).

In his briefings in this matter, Berge appears to argue the error of the state court judgments.  However, under current law, a petitioner is not to demonstrate that the determination of a factfinder was erroneous or incorrect but that the application of federal law was "objectively unreasonable."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 76, 123 S.Ct. 1166, 1175 (2003).

## B.  MIRANDA CLAIMS (CLAIMS 1, 2 AND 3)

Claims 1 through 3 relate to Berge's claims of violations of <u>Miranda v. Arizona</u>.

## 1.  Litigation in the Trial Court

Berge filed a pre-trial motion in the Superior Court to, among other requests, suppress the

12

statements he made on September 14 to the troopers. (Doc. 92-6). He claimed that he was in custody and not initially advised of his constitutional rights. (Doc. 92-6 at 1). He also claimed that he did not make a knowing, intelligent and voluntary waiver of those rights. (Doc. 92-6 at 1). Superior Court Judge Thomas M. Jahnke denied the motion in a written four-page order. (Doc. 92-6).

Judge Jahnke found the Berge's encounter with the troopers was "clearly non-custodial as that term is defined in the cases." (Doc. 92-6 at 2). He observed that while there were several factors that could possible weigh in the favor of custody, that those factors were common to almost all police interrogations. (Doc. 92-6 at 2). Those factors were that the interviewers had been police, that the place of the interview was separate from the general public, and that Berge had been patted down before being interviewed. (Doc. 92-6 at 2). He also observed that there were no other factors possibly indicative of custody. (Doc. 92-6 at 2).

Judge Jahnke found that there were many indicators of a non-custodial situation. (Doc. 92-6 at 2). Those indicators were that the officers were in civilian dress; the officers' weapons were concealed; the officers were in an unmarked van; they approached Berge on a semi-residential street; they began the conversation in a non-threatening fashion; there was good reason to have the interview in the van where the distractions of the outside environment were subdued; the significance of the pat down was minimized by being explained as a part of routine; that the troopers entered the van at the same time as Berge did, they did not assist him in; Berge sat in the front passenger seat; the tone of the interview was initially friendly and always informal and courteous. (Doc. 92-6 at 2). Judge Jahnke was certain that Berge was uncomfortable in the situation but found that was not a determinative factor of whether an interrogation is custodial.

13

(Doc. 92-6 at 2).

Judge Jahnke weighed these factors and decided that Berge was not in custody. (Doc. 92-6 at 2). Thus, because Berge had not been in custody, Judge Jahnke determined there was no need for <u>Miranda</u> warnings and it was unnecessary to determine whether Berge had waived his <u>Miranda</u> rights. (Doc. 92-6 at 2).

## 2. Direct Appeal of the Miranda Claims

Berge appealed the denial of his suppression motion to the Alaska Court of Appeals. <u>Berge I</u>, 2000 WL 1058955, at *1. Berge asserted that he had been in custody when he was interviewed by the troopers, that the warnings he received were inadequate under <u>Miranda</u>, and, even if the warnings were adequate, that he did not waive his rights. <u>Id.</u>

The court did not reach the issue of whether Berge had been in custody. <u>Berge II</u>, 2005 WL 901779, at *5. The issue of custody was thought to be irrelevant because it was found that even if Berge had been in custody, he had been adequately warned of his <u>Miranda</u> rights and that he had waived those rights. <u>Id.</u>

The court first acknowledged that Berge claimed that the <u>Miranda</u> warnings he received were lacking because he was not informed that he could "decide at any time to exercise these rights and not answer any questions or make any statement." <u>Berge I</u>, 2000 WL 1058955, at *3. The court then recalled that the rule the Supreme Court established in <u>Miranda</u>, that statements obtained as a result of a custodial interrogation are inadmissable, unless the police have advised the suspect of his right to silence, his right to the presence of retained or appointed counsel during questioning and that any statement he does make may be used as evidence against him. <u>Id.</u> Furthermore the court stated that the fundamental test is whether the warnings reasonably

14

convey his rights to the suspect.  Id.

The court found that the warnings given to Berge conveyed the requisite information.  Id. at *4.  Also, the court found that Berge evidently understood his right to silence by the fact that he exercised it later in the interview.  Id.

In regard to Berge's further claims grounded in Miranda, the court found that Berge had waived his Miranda rights.  Id.  The court observed that Berge was twice read his Miranda rights, the second time at his own request, and then after the second hearing he responded with an affirmative "Okay."  Id.  He then responded to the troopers questions, stopping when the questioning became pointed and accusatory.  Id.  The Court of Appeals found this to demonstrate that Berge voluntarily waived his Miranda rights.  Id.

**3.  Claim 1: The Finding That Berge Was Not in Miranda Custody is Not Contrary To or an Unreasonable Application of Clearly Established Federal Law**

**a.  Habeas Petition**

Berge argues in his brief on the merits that, based on the Supreme Court's decision in Stansbury v. California, 511 U.S. 318, 114 S.Ct. 1526 (1994), that he was in custody for purposes of Miranda. (Doc. 72 at 9).  Antrim counters that Berge's briefing is not properly directed.  (Doc. 92 at 20).  Whereas Antrim asserts that Berge seems to be appealing the merits of the suppression motion to the court, that in habeas actions the court considers whether the state courts' decisions represent reasonable applications of Supreme Court case law.  (Doc. 92 at 20). Antrim asserts that Judge Jahnke's decision was a reasonable application of Supreme Court case law.  (Doc. 92 at 24).

As noted supra, in determining whether habeas relief is appropriate, the federal court

15

must look to the last reasoned state court decision. <u>Van Lynn v. Farmon</u>, 347 F.3d 735, 738 (9th Cir. 2003). It could be argued that the last reasoned state court decision on this issue was the Court of Appeals' decision, in which the court ruled the issue of whether Berge was in custody was irrelevant and need not be decided because Berge received adequate <u>Miranda</u> warnings. <u>Berge I</u>, 2000 WL 1058955 at *4. Such a determination cannot be found to be contrary to or an unreasonable application of clearly established federal law. However, it can be argued that the decision of the Superior Court was the last reasoned state court decision to consider whether Berge was in custody, since it was the lower court's decision which grappled with the facts and ruled on the issue, so the following analysis of Judge Jahnke's ruling is provided.

### b. Applicable Federal Law

Custody, for purposes of the <u>Miranda</u> warnings, is determined by the totality of the circumstances. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663, 124 S.Ct. 2140, 2149 (2004). Courts are first to examine "all of the circumstances surrounding the interrogation" and then determine if, in that situation, a reasonable person would have felt at liberty to disengage and depart. <u>Stansbury</u>, 511 U.S. at 322, 325, 114 S.Ct. at 1529, 1530; <u>see also</u> <u>United States v. Craighead</u>, 539 F.3d 1073, 1082 (9th Cir. 2008). This determination is based on objective circumstances, "not on the subjective views harbored by either the interrogating officers or the person being questioned." <u>Stansbury</u>, 511 U.S. at 323, 114 S.Ct. at 1529.

### c. Conclusion

Berge has not proposed that the legal principle Judge Jahnke applied was contrary to established federal law, nor has he proposed that the application was in itself unreasonable nor has he alleged that the determination of the facts was not reasonable. In his Reply to the

16

Respondent's Memorandum on the Merits, Berge has titled his legal argument in regard to this claim "The Trial Court *Erred* in Finding Non-Custodial Interrogation," (Doc. 98 at 6) (emphasis added), in seeming disregard for the type of argument required for a habeas petition.

As noted above, the analysis required by Stansbury is two stepped; first, the factfinder must examine the circumstances surrounding the interrogation, and second, determine if a reasonable person would have felt free to depart of their own will. 511 U.S. at 322, 325, 114 S.Ct. at 1529, 1530. In accordance with this principle Judge Jahnke identified a great number of circumstances surrounding the troopers' interview with Berge. Having identified those circumstances, he then looked at them from an objective viewpoint to determine whether they would create an atmosphere of custody and coercion.

Berge identifies a number of circumstances that Judge Jahnke did not identify, and Berge contests a great many of Judge Jahnke's determinations of the circumstances. (Doc. 72 at 9-15). These proposed circumstances and different interpretations are not relevant to the determination of custody for Miranda or the suggested interpretation does not render Judge Jahnke's decision as objectively unreasonable.

Berge identifies that there was an arrest warrant for him prior to his interview. (Doc. 72 at 9). He claims that the existence of probable cause to arrest is strong evidence that an interrogation of the accused is custodial. (Doc. 72 at 9). He cites to Stansbury, but Stansbury does not stand for that proposition. The closest proposition to that is that the Supreme Court has stated that custody exists when probable cause to arrest has led to an actual arrest or significant restriction of an individual's liberty prior to the interrogation. Stansbury, 511 U.S. at 322, 114 S.Ct. at 1529 ("the ultimate inquiry is simply whether there was a formal arrest or restraint on

17

freedom of movement of the degree associated with a formal arrest") (internal quotations omitted). Nevertheless, as <u>Stansbury</u> states, if an individual is not aware of a particular circumstance, then that circumstance cannot have an effect on the perceived custodial nature of the situation. <u>See id.</u> at 323-24, 114 S.Ct. at 1529 (stating that if an individual does not know a policeman's intention, that intention is not an objective factor to figure into the determination of custody).

Berge argues that Trooper McPherron intended to arrest Petitioner without regard to the outcome of the planned interview, and that this creates a custodial situation. (Doc. 72 at 11). Berge, having read <u>Stansbury</u>, should be aware, as stated above, that the circumstances to be considered in determining custody for the purposes of <u>Miranda</u> are the circumstances that a detached third-party could observe and not the subjective intentions or knowledge of the involved parties. <u>See Stansbury</u>, 511 U.S. at 323, 114 S.Ct. Yet Berge does not indicate he was ever made aware of McPherron's intention to arrest him.

While Judge Jahnke concurs in part with Berge that patting down an individual is commonly indicia of police custody, Judge Jahnke notes that the custodial effect was minimized by the troopers claiming that the frisk was routine procedure. (Doc. 96 at 2). Berge cites to <u>Florida v. Royer</u>, 460 U.S. 491, 103 S.Ct. 1319 (1983), to suggest that the seizure of property pending questioning is indicative of custody. (Doc. 72 at 10). The scrutinized event in <u>Royer</u> took place in an airport where agents specifically told Royer that they suspected him of transporting narcotics. 460 U.S. at 501, 103 S.Ct. at 1326. The agents then took and retained Royer's driver's license and tickets, asked him to accompany them to a police room, and did not tell him he was free to leave. <u>Id.</u>

18

The property seized in <u>Royer</u> was Royer's driver's license and his tickets for travel, without either, his ability to move freely and leave the meeting with police was restricted. The seizure of Berge's knife was not a curtailment of his liberty on par with the seizure of Royer's property. Berge has not effectively proposed that Judge Jahnke's application of the law was unreasonable.

The troopers also explained that their giving of the <u>Miranda</u> warnings was routine. <u>Berge I</u>, 2000 WL 1058955, at *2. A reasonable person could believe that prior to discussing a topic in which Berge may have been able to self-incriminate–yet which the troopers orally stated was not based on any suspicion of any wrongdoing by Berge (Doc. 92-4 at 3, Doc. 92-5 at 4)[8]– that the troopers would announce the <u>Miranda</u> warnings.

Berge claims that "petitioner, like any reasonable person, perceived himself to be in custody while being questioned by two armed troopers in their vehicle." (Doc. 72 at 10-11) (emphasis in original). In his argument he emphasizes the fact that the troopers are armed yet acknowledges in a foot note that "any reasonable person understands that on-duty troopers bear arms." (Doc. 72 at 11 n.6). By stating that the common person is aware that on-duty troopers are armed then that factor does not speak one way or the other in concern to custody; the fact would not differ whether the troopers were leading a custodial interview or asking a citizen for the time of the day. Berge has not advanced his argument nor demonstrated the unreasonableness of Judge Jahnke's decision in this regard.

Berge also asserts he was in custody because the questioning took place in a police

_____

[8] What is labeled as inaudible in Docket 92-4 at 3 is transcribed in Docket 92-5 at 4 as Siegfried explaining the recitation of the <u>Miranda</u> warning as being based in habitual precaution.

19

vehicle. The legal principle at issue is based around objective circumstances. The circumstances of Berge's interview did not include a standard patrol car; not only was the vehicle unmarked but the stated purpose for entering the vehicle was benign–to get out of the noise of the traffic. Berge I, 2000 WL 1058955, at *2. The circumstances are plausibly non-custodial.

Judge Jahnke's decision that Berge was not in custody for the purposes of Miranda cannot be said to have been contrary to, or involving an unreasonable application of clearly established federal law. Therefore Berge is not entitled to habeas relief on this claim.

## 4. Claim 2: The Finding that Berge Received an Adequate Miranda Warning is Not Contrary To or an Unreasonable Application of Clearly Established Federal Law

### a. Issue Presented

Berge argues that the Miranda warning given to him by Trooper McPherron was inadequate because he was never advised of his right to "decide at any time to exercise these rights and not to answer any questions or make any statement." (Doc. 72 at 15) (citing Miranda, 384 U.S. 436, 86 S.Ct. 1602). Antrim counters by stating that Berge's argument is without authority as he does not cite any "clearly established" Supreme Court ruling. (Doc. 92 at 25).

### b. Applicable Federal Law

For the statements made by an individual in custody while being interrogated to be admissible, that individual must be warned:

> that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

384 U.S. at 479, 86 S.Ct. at 1630. The Court went on to say that the individual must be allowed to exercise these rights at anytime throughout the interrogation. Id. While the right to terminate

an interview was obviously considered and incorporated into the <u>Miranda</u> decision it was not made an aspect of the mandated warnings. <u>See</u> <u>United States v. Lares-Valdez</u>, 939 F.2d 688, 689-90 (9th Cir. 1991) (stating that the Supreme Court obviously contemplated but did not require that a defendant need to be informed of his right to stop questioning after it has started).

### c.  Conclusion

Berge's sole contention in regard to this claim is that, citing the <u>Miranda</u> decision in general, that the failure to advise a suspect of "<u>any</u>" of his rights makes inadmissable any statements made by the suspect.  (Doc. 98 at 11).

In Berge's direct appeal to the Court of Appeals, Berge argued that the <u>Miranda</u> warnings he was given were inadequate.  <u>Berge I</u>, 2000 WL 1058955, at *3-4.  The court found that Berge had been informed of the rights mandated by <u>Miranda</u>: that he had the right to silence, the right to counsel before questioning, that counsel would be appointed if he could not afford it, and that his statements could be used against him in court.  <u>Id.</u>  (citing <u>Miranda</u>, 384 U.S. at 479, 86 S.Ct. at 1630).  This finding was noted in <u>Berge II</u>.  2005 WL 901779, at *5.

The federal law is clearly established that the required <u>Miranda</u> warnings are that a suspect be informed that he has the right to silence, that he has to the right to counsel before any questioning, that counsel shall be appointed if he cannot afford it and that his statements can be used against him in court.  384 U.S. at 479, 86 S.Ct. at 1630.  Berge was informed of those rights.  <u>Berge I</u>, 2000 WL 1058955, at *4.  Berge has not cited any federal law that holds that the <u>Miranda</u> warnings require any more cautions than what he received.  Therefore, there is no reason to believe that the resolution of Berge's claim of inadequate <u>Miranda</u> warnings was contrary to established federal law.

**5. Claim 3: The Finding that Berge Waived His Miranda Rights is Not Contrary To or an Unreasonable Application of Clearly Established Federal Law**

### a. Issue Presented

Berge asserts that the troopers did not receive a valid waiver from him of his Miranda rights. (Doc. 72 at 11). Berge again seems to be arguing the merits of the original claim and not arguing the reasonableness of the decision. Antrim responds to Berge's claim by asserting that the Court of Appeals' decision that Berge understood his Miranda rights and waived them is not contrary to or an unreasonable application of clearly established federal law. (Doc. 92 at 28).

### b. Applicable Federal Law

If a prosecutor intends to use statements elicited from a custodial interrogation, the prosecution must demonstrate that the defendant knowingly and intelligently waived his rights. Miranda, 384 U.S. at 475, 86 S.Ct. at 1628. An express statement of waiver of one's rights is often strong proof of the validity of the waiver but is not necessary proof; in some cases waiver can be inferred from the actions and words of the person interrogated. North Carolina v. Butler, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757 (1979).

The inquiry into the validity of a waiver of one's Miranda rights has two distinct aspects that must be viewed together as the "totality of the circumstances surrounding the interrogation." Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141 (1986). The waiver must be an uncoerced choice and that choice must be made with the requisite level of comprehension of the rights being forgone with the choice of a waiver. Id.

In the recent case of Berghus v. Thompkins, 130 S.Ct. 2250 (2010), the U.S. Supreme Court held that a defendant's silence for two hours and forty-five minutes after hearing Miranda

warnings did not constitute evidence that the defendant had invoked his right to remain silent. Rather, the defendant's answer to police questions after his silence was viewed by the Court as a "course of conduct indicating waiver" of the right to remain silent, particularly when there was no contention that the defendant did not understand his rights. Berghus at 2263, citing Butler, supra, at 373.

### c. Conclusion

Berge contends that the troopers did not receive a valid waiver of his Miranda rights. He bases this contention on the alleged facts that the troopers never actively sought for him to waive his rights; and that the seizure and retention of one's belongings during questioning, or the attempt to try to deceive a suspect as to the purpose of questioning, automatically renders a purported waiver involuntary. (Doc. 72 at 16-17).

The only law to which Berge cites, aside from Miranda for the baseline declaration that a knowing and intelligent waiver is needed for self-incriminating statements to be made admissible in court, stands for the general proposition that a defendant's waiver of constitutional rights should not be presumed. (Doc. 72 at 16). Yet Berge does not indicate where such waiver was presumed. The Court of Appeals cited to Miranda, 384 U.S. at 475, when they ruled that Berge had voluntarily waived his Miranda rights as demonstrated by his response of "Okay" to the reading of his rights. The court also relied upon Berge's response to the troopers' questions for a period of time until the questions became more pointed. Berge I, 2000 WL 1058955, at *4.

Nevertheless, Berge argues that troopers must actively seek an individual's waiver for their statements to be admissible. (Doc. 72 at 16). Contrary to Berge's assertion, the Ninth Circuit has affirmed the waiver of Miranda rights where the police did not expressly seek, nor did

23

the defendant expressly state, the waiver of his rights. See Terrovona v. Kincheloe, 912 F.2d 1176, 1180 (9th Cir. 1990); see also, United States v. Younger, 398 F.3d 1179, 1185 (9th Cir. 2005) (citing United States v. Cazares, 121 F.3d 1241, 1244 (9th Cir. 1997).

As Butler holds, a waiver of constitutional rights may be implied. 441 U.S. at 373, 99 S.Ct. at 1757. A court, to test the validity of the waiver, is to look to the totality of the circumstances to determine if the waiver was uncoerced and made with the required level of comprehension. Moran, 475 U.S. at 421, 106 S.Ct. at 1141. In Berge's case, the Court of Appeals surveyed his situation at the time of the interview and inferred from his "Okay" and subsequent cooperation with the troopers, that he had voluntarily waived his Miranda rights. Berge I, 2000 WL 1058955, at *4. The Court of Appeals' decision is not contrary to or an unreasonable application of established federal law at the time of their decision. And it is in accord with the Supreme Court's most recent decision in Berghus v. Thompkins, supra.

## C. SIXTH AMENDMENT CLAIMS (CLAIMS 4 AND 5)

Claims 4 and 5 relate to Berge's claims of violations of the Sixth Amendment.

### 1. Litigation in the Trial Court and on Direct Appeal

As part of the same pre-trial motion to suppress in which Berge raised his Miranda claim, he raised a right to counsel claim under the Sixth Amendment. Berge I, 2000 WL 1058955, at *4. He argued that his right to counsel attached when the troopers spoke to him because a murder complaint had been filed against him and an arrest warrant had been obtained before they contacted him. Id. He asserted that he did not waive that right to counsel. Id.

Judge Jahnke did not address Berge's right to counsel claim in the written decision. Id. Having reached the conclusion that Berge's Fifth Amendment rights were not violated because

Case 3:05-cv-00290-RRB   Document 124   Filed 03/30/11   Page 24 of 39

Berge had not been in custody during the questioning, Judge Jahnke decided it was unnecessary to determine whether the interview was conducted in violation of Berge's Sixth Amendment right to counsel. Berge II, 2005 WL 901779, at *5.

Berge appealed to the Court of Appeals. Berge I, 2000 WL 1058955, at *4. Berge conceded in this direct appeal that the Superior Court did not rule on the issue but argued that the court implicitly denied the claim. Id. The Court of Appeals ruled that the claim was forfeited; that because Berge did not press the court for a ruling on the issue, he did not preserve it for appeal. Id.

## 2.  Litigation Concerning Post-Conviction Relief

Following the direct appeal process, Berge filed a petition for post-conviction relief arguing that his trial counsel, Seid, was incompetent for failing to press the trial judge for a ruling on the Sixth Amendment claim. Berge II, 2005 WL 901779, at *5. The Superior Court dismissed the claim concluding that Berge failed to plead a prima facie case that Berge would have been entitled to suppression of his statements on the right to counsel claim. Id.

Berge appealed the Superior Court's dismissal of the claim to the Court of Appeals. Id. He argued that his petition established good reason to believe that his Sixth Amendment claim would have been successful had Seid pursued it. Id.

The Alaska Court of Appeals held that Berge's petition for post-conviction relief failed to set out a prima facie case that his trial attorney's failure to demand a trial court ruling on the Sixth Amendment claim harmed him. Id. at *8. The court noted that the right to counsel under the Sixth Amendment is triggered when the government initiates formal juridical proceedings against a person and they thereby become an "accused." Id. at *5. The court noted that Alaska

25

law is unsettled on the issue of when the right to counsel attaches.  Id. at *8.  The court found

that, irregardless of when the right to counsel attached to Berge, Berge had waived his right to

counsel.  Id.  Having waived his right to counsel, his trial attorney could not have obtained

suppression of Berge's statements on the theory that this interview constituted a violation of

Berge's Sixth Amendment rights.  Id.  The Court concluded that Berge's petition for post-

conviction relief failed to set out a prima facie case that he was harmed by Seid's failure to

demand a trial court ruling on the Sixth Amendment claim.  Id.

### 3.  Claims 4 and 5: Petitioner's Right to Counsel Claims are Barred by an Independent and Adequate State Ground and Therefore Are Not Proper for Habeas Review, and The Finding that Berge Forfeited His Sixth Amendment Right to Counsel Claim is Not Contrary To or an Unreasonable Application of Clearly Established Federal Law

#### a.  Issue Presented

Berge asserts with Claim 4, that the Sixth Amendment right to counsel attached to him

when the court accepted the complaints and issued the warrant for his arrest.  (Doc. 72 at 17).

With Claim 5, Berge asserts that he did not validly waive his allegedly attached right to counsel.

(Doc. 72 at 19).

Antrim counters that Berge's failure to press Judge Jahnke to rule on his Sixth

Amendment claim was effectively a forfeiture of that issue.  (Doc. 92 at 31).  Berge's forfeiture

of the issue left the Court of Appeals with no decision to review on appeal, therefore the Court of

Appeals found that Berge had forfeited his Sixth Amendment claim.  (Doc. 92 at 31).  Antrim

asserts that this finding of forfeiture is based on an independent and adequate state ground, thus it

blocks federal habeas review.  (Doc. 92 at 31).

26

### b.  Applicable Federal Law

#### i.  Independent and Adequate State Ground Doctrine

The Supreme Court has succinctly defined the protocol demanded by the "independent and adequate state ground doctrine" for federal courts entertaining habeas petitions.  Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553-54 (1991).  A court, "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgement."  Id.

An issue that is not properly pursued and preserved under state law may be treated as if it were forfeited.  See Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506 (1977).  The forfeiture of an issue, as a matter of state procedure, is an independent and adequate state law ground for blocking federal habeas corpus review.  See Stewart v. Smith, 536 U.S. 856, 861, 122 S.Ct. 2578, 2582 (2002).

#### ii.  The Sixth Amendment Right to Counsel

The Sixth Amendment right to counsel attaches to a defendant at the initiation of adversary judicial criminal proceedings.  Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882 (1972).  The initiation of adversarial judicial criminal proceedings may be by way of formal charge, preliminary hearing, indictment, information, or arraignment.  Id.  To determine when "adversary judicial proceedings" have commenced, federal courts look to the relevant state law. See Moore v. Illinois, 434 U.S. 220, 228, 98 S.Ct. 458, 464-65 (1977).

### c.  Conclusion

#### i.  Forfeiture Under the Independent and Adequate State Ground Doctrine

Berge admitted in his direct appeal that the Superior Court did not rule on whether his

Sixth Amendment right to counsel was violated by the interview.  Berge I, 2000 WL 1058955, at

*4.  He argued that the court implicitly denied the claim.  Id.  The Court of Appeals ruled that the

claim was forfeited because Berge did not press the trial court for a ruling on the issue, he did not

preserve it for appeal.  Id.  The court based this ruling in Alaska state law, citing Marino v. State,

934 P.2d 1321, 1327 (Alaska App. 1997); Erickson v. State, 824 P.2d 725, 733 (Alaska App.

1991); Jonas v. State, 773 P.2d 9060, 963 (Alaska App. 1989).

   In Wainwright, the Supreme Court recognized as legitimate a ruling that failure to

preserve an issue may be treated as forfeiture of that issue.  433 U.S. at 87, 97 S.Ct. at 2506.

Berge's forfeiture of this issue was wholly based on Alaskan state law precedent, and thus was a

matter of state procedure.  Berge's forfeiture is based on an independent and adequate state law,

barring this claim from being the basis for habeas relief.  See Stewart, 536 U.S. at 861, 122 S.Ct.

at 2582.

### ii.  Under the Sixth Amendment Right to Counsel

   When considering the Sixth Amendment claims of Berge, the Court of Appeals found

that, regardless of when the right to counsel attached, Berge, as was found in the direct appeal,

was able to and had waived his right to counsel.  Id.  The court supported this by citing a

Supreme Court ruling, Patterson v. Illinois, 487 U.S. 285, 108 S.Ct. 2389 (1988).  Patterson held

that a particular suspect's valid waiver of his right to counsel and right to silence after being

advised of his Miranda rights was sufficient to waive his right to counsel under both the Fifth and

Sixth Amendments.  Id. at 296-97, 108 S.Ct. at 2397.  Berge has not argued, nor is it the case,

that the Court of Appeals applied law that was contrary to clearly established federal law.  The

state courts did not apply law that was contrary to, or an unreasonable application of clearly

established federal law.

## D.  INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS (CLAIMS 6, 7 AND 8)

Claims 6, 7 and 8 relate to Berge's claims of having received ineffective assistance of counsel in violation of the implied guarantee within the Sixth Amendment.

### 1.  Post-Conviction Relief and Subsequent Appeal

Following the direct appeal, Berge filed a petition for post-conviction relief in Superior Court, asserting in ten different respects that he had received ineffective assistance of counsel from his trial attorney.  Berge II, 2005 WL 901779, at *1.  The Superior Court ultimately concluded that none of Berge's allegations stated a prima facie case of ineffective representation and therefore dismissed Berge's petition.  Id.

Berge appealed the Superior Court's decision in respect to four of the original ten claims of ineffective assistance of counsel.  Id.  He alleged that his pleadings stated a prima facie case and that he should have been allowed to litigate them further.  Id.  The Court of Appeals agreed with the Superior Court's finding that Berge had failed to plead a prima face case of ineffective assistance of counsel and therefore affirmed the dismissal of Berge's petition for post-conviction relief.  Id.

### 2.  Applicable Law on Effective Assistance of Counsel

The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions.  McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 1449 n.14 (1970). In evaluating the adequacy of representation in a criminal case, in regard to federal standards, the

29

courts apply a two-pronged test developed in <u>Strickland v. Washington</u>.[9]  466 U.S. 668, 104 S.Ct. 2052 (1984).  First, the defendant must demonstrate that the counsel's representation fell below an objective standard of reasonableness.  <u>Id.</u> at 687-88, 104 S.Ct. at 2064.  Second, the defendant must show that there is a reasonable probability that counsel's errors affected the outcome of the proceeding.  <u>Id.</u> at 694, 104 S.Ct. at 2068.

A decision is "contrary to" clearly established federal law when the deciding court either applied a rule essentially different from the governing rule or the court faced a set of facts effectively indistinguishable from a case decided by the Supreme Court and ruled differently then the Supreme Court had.  <u>Williams</u>, 529 U.S. at 405-406, 120 S.Ct. at 1519-20.

Here, in Berge's situation, the state and federal standards of review are roughly the same. <u>Risher</u> and <u>Strickland</u> apply two-pronged tests, both with error and prejudice prongs, yet the <u>Risher</u> test is arguably more protective of a defendant's rights.  <u>Galvan v. Alaska Dep't of Corr.</u>, 397 F.3d 1198, 1203 (9th Cir. 2005) ("there would not be much chance of establishing a federal constitutional violation if petitioner could not establish a state constitutional violation").

In applying the <u>Strickland</u> inquiry, a court must consider the totality of the circumstances. 466 U.S. at 690, 104 S.Ct. at 2066.  In analyzing the first prong of the <u>Strickland</u> inquiry, the performance prong, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  <u>Id.</u>  Tactical choices made by counsel are to be afforded a "heavy measure of deference."  <u>Id.</u> at 691, 104 S.Ct. at

---

[9] The State of Alaska has its own test to determine if a defendant has received unlawfully ineffective assistance of council that is similar to <u>Strickland</u>.  The <u>Risher</u> test requires that there similarly that firstly, counsel's performance must have been below the standard of competency and secondly, that there be a reasonable *possibility* that the error affected the outcome of the proceeding.  <u>Risher v. State</u>, 523 P.2d 421, 425-25 (Alaska 1974).

2066.

In regard to the second prong of the Strickland inquiry, the prejudice prong, the issue is not whether counsel made an error, but whether there is a reasonable probability that the error affected the end judgment. Id. Aside from certain claims in which prejudice is presumed, it is the defendant's affirmative requirement to prove counsel's unreasonable performance was prejudicial. Id. at 693, 104 S.Ct. at 2067. To prevail the defendant must show that, there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt in resolving the issue as it had been resolved. Id. at 695, 104 S.Ct. at 2068-69.

In all three of Berge's assertions of ineffective assistance of counsel, Berge asserts that whatever alleged error the trial counsel committed "clearly fall[s] within the holding of **Strickland**." (Doc. 72 at 21) (emphasis in original). Berge has refrained from articulating just how any of the claims fall within either prong of the holding of Strickland.

Berge does not assert that the state court applied law contrary to clearly established federal law. While the state court did not, by name, apply Strickland, the rule it did apply is remarkably similar. It is virtually the same but more amenable to defendants. It is not inherently contrary to federal law. Berge is left contesting that there was an unreasonable application of the law. The Supreme Court states that "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S.Ct. at 2069.

Berge is unable to convincingly argue his pleadings have met the requirements of either prong of Strickland. To prevail on a Strickland claim, the error of the counsel must have had a

31

reasonable probability of prejudicing the outcome of the case. 466 U.S. at 691, 104 S.Ct. at 2066. Even if all of the alleged errors by counsel were corrected, the jury still would have had strong evidence on which to convict Berge. There was no unreasonable application of the law by the Superior Court or the Court of Appeals in this matter.

**3.  Claim 6:  The Finding that Berge's Trial Counsel was Not Incompetent, When He Failed to Object to the Prosecutor's Comments on Berge's Invocation of His Right to Silence, was not an Unreasonable Application of Clearly Established Federal Law**

### a.  Procedural Background

In Berge's direct appeal to the Alaska Court of Appeals, Berge asserted that he had exercised his right to remain silent and that the prosecutor, by playing the portion of the tape in which he told the troopers he had nothing more to say, was in effect making an improper adverse comment on Berge's invocation of his right to silence. Berge II, 2005 WL 901779 at *8-9. Since Berge's trial counsel Seid had not objected to the jury's hearing this portion of the tape, the Court of Appeals reviewed Berge's claim for plain error. Id. The court concluded that there was no plain error because Seid had apparently made a tactical decision to let the jury hear the portion of the tape. Id.

In Berge's petition for post-conviction relief he argued that Seid was incompetent for choosing to allow the jury to hear this portion of the tape, stating that the playing of the tape was an adverse comment of Berge's exercise of his right to silence. Id. The Superior Court ruled that Berge had failed to set forth a prima facie case of attorney incompetence on the issue. Id.

Berge appealed to the Court of Appeals. Id. The Court of Appeals found that Berge failed to present a prima facie case of incompetence. Id. The court reasoned that Berge's defense was that he had no involvement in and no knowledge of Taylor's death. Id. The court

found the taped interview to be arguably consistent with the defense–that he was innocent and stopped speaking only when he realized he would be unable to convince the troopers of his innocence.  Id. at *10.  The Court of Appeals concluded that a competent defense attorney could have used the disputed portion of the tape to bolster Berge's assertion of innocence.  Id. Therefore, the Court of Appeals found that Berge had failed to establish a prima facie case of attorney incompetence in regard to this issue.  Id.

Berge also argued that Seid was incompetent for failing to object to the state's cross-examination of Berge in regard to that portion of the tape.  Id.  The prosecutor asked Berge why he told the troopers he had nothing more to say when he may have attempted to claim his innocence.  Id.  Berge claimed that these questions were improper adverse comments on his invocation of his right to silence.  Id. at *11.

The Court of Appeals relied on its earlier conclusion that a competent defense attorney could have decided to let the jury hear the portion of the tape at issue.  Id.  The Court of Appeals reasoned that once the statement was admitted it would be proper for the prosecutor to ask Berge to explain it.  Id.  Also it reasoned that a competent defense attorney could expect objections to the prosecutor's questions would be overruled.  Id.  Furthermore, the Court of Appeals stated that a competent defense attorney could conclude that allowing a jury to hear Berge's answers to the questions could reinforce the defense's theme that Berge was an innocent man that was willing to talk until he found it futile to try to convince the troopers of his innocence.  Id.  The Court of Appeals found that Berge did not set out a prima facie case that Seid acted incompetently when he failed to object to the prosecutor's questions.  Id.

33

**b.  Conclusion**

The alleged errors central to this discussion relate to Berge's invocation of the right to remain silent.  Berge has not demonstrated that the state court analysis of these issues was an unreasonable application of <u>Strickland</u>.

Clearly established law holds that courts accord high deference to tactical decisions of counsel in judging whether the assistance provided met a reasonable standard of adequacy. <u>Strickland</u>, 466 U.S. at 691, 104 S.Ct. at 2066.  The Court of Appeals decision considered Seid's strategic decisions, holding them to the more stringent standard of <u>Risher</u>.  The court did not unreasonably apply federal law and thus this issue is not a ground for federal habeas relief.  28 U.S.C. § 2254(d)(1).

**4.  Claim 7: The Finding that Berge's Trial Counsel was Not Ineffective for Failing to Challenge the Glass Warrant was not an Unreasonable Application of Clearly Established Federal Law**

**a.  Factual and Procedural Background**

Local resident Dickerson reported to troopers that Berge had confided in him, prior to the discovery of Taylor's body, that Berge had shot and killed Taylor.  <u>Berge II</u>, 2005 WL 901779, at *2.  Dickerson's retelling of Berge's story corroborated a number of facts of the homicide.  <u>Id.</u>

Trooper McPherron obtained a <u>Glass</u> warrant to monitor and record a conversation between Dickerson and Berge.  <u>Id.</u>  Dickerson and Berge met and had a conversation, which was recorded pursuant to the warrant, in which Berge admitted to shooting and killing Taylor among other incriminating details.  Id.

Berge argued in his petition for post-conviction relief that his trial attorney was incompetent for failing to challenge this warrant.  <u>Id.</u> at *3.  He argued that the State's warrant

34

application failed to satisfy the <u>Aguilar-Spinelli</u> rule.[10]  <u>Id.</u>  He specifically argued that Alaska law required the troopers to independently corroborate at least some details of Dickerson's tip before the magistrate could properly issue the warrant.  <u>Id.</u>  Berge asserted that there was no corroboration of any kind and that this deficiency would have been apparent to any competent defense attorney.

The Court of Appeals observed that the <u>Aguilar-Spinelli</u> test applies only when the search warrant application rests on hearsay.  <u>Id.</u> at *4.  In Berge's case the warrant did not rest on hearsay, but instead Dickerson personally testified at the warrant application hearing.  <u>Id.</u>  The court looked to state precedent to determine that there was adequate procedural safeguards to assure a sound basis for the warrant.  Id.

Berge's second argument relating to the <u>Glass</u> warrant was that the troopers misled the magistrate by failing to reveal facts that tended to undercut Dickerson's retelling of Berge's statements regarding Taylor's death.  <u>Id.</u>  The Court of Appeals looked to the information and found that Berge's disputed facts did not substantially undermine the probable cause on which the warrant was issued.  <u>Id.</u>

The Court of Appeals acknowledged that when a petitioner for post-conviction relief challenges their trial attorney's failure to file a motion seeking suppression of evidence, one of the petitioner's burdens is to demonstrate that the motion would ultimately have been granted.  <u>Id.</u>  Berge's petition for post-conviction relief failed to demonstrate any reasonable possibility that the <u>Glass</u> warrant could have been attacked successfully and therefore it failed.  <u>Id.</u>

---

[10] The Court of Appeals cited <u>State v. Jones</u>, for the proposition that, as a matter of state law, the <u>Aguilar-Spinelli</u> test governs the evaluation of hearsay information offered to support a search or seizure.  706 P.2d 317, 324-25 (Alaska 1985).

**b. Conclusion**

The Court of Appeals found, not unreasonably, that Berge's arguments attempting to undercut the basis for the <u>Glass</u> warrant, even if the allegations were true, would not have invalidated the warrant. Therefore the state judgment was not an unreasonable application of federal law in that there is no reasonable probability that prejudice resulted from the trial counsel's choice to not attack the warrant.

**5. Claim 8: The Finding that Berge's Trial Counsel was Not Ineffective for Failing to Obtain a Ruling on a Motion to Suppress that was Based on Berge's Right to Counsel Argument was not an Unreasonable Application of Clearly Established Federal Law**

**a. Factual and Procedural Background**

As discussed earlier, prior to trial, Berge's counsel filed a motion to suppress the statements he made in the interview with the troopers on September 14. <u>Berge II</u>, 2005 WL 901779, at *5. The suppression motion raised both Fifth and Sixth Amendment grounds. <u>Id.</u> It was denied solely on Fifth Amendment grounds and the Sixth Amendment assertions were never reached. <u>Id.</u> In the appeal of the denial of this motion the Court of Appeals ruled that because Berge's attorney had not pressed for a ruling on the Sixth Amendment claim, it was thereby waived. <u>Id.</u>

Berge asserted in his petition for post-conviction relief that Seid was incompetent for failing to press the Superior Court judge for a ruling on the Sixth Amendment claim. <u>Id.</u> The Superior Court judge ruled that Berge had not pled a prima facie case that Berge would have been entitled to suppression of his statements on the Sixth Amendment ground. <u>Id.</u>

Berge appealed the decision on the post-conviction relief petition to the Court of Appeals alleging that his pleadings established good reason to believe that the Sixth Amendment claim

36

would have been successful had Seid pursued it.  Id.

As discussed earlier, the Court of Appeals concluded that Alaska law was unsettled on the issue of whether Berge's right to counsel had attached at the time of the interview.  Id. at *5-8.  Nevertheless the Court of Appeals held that, whether or not Berge's right to counsel had attached at that point in time, he had validly waived that right.  Id. at *8.  Having waived the right to counsel, the Court of Appeals found that Seid could not have obtained suppression of Berge's statements based on Sixth Amendment grounds.  Id.  Therefore, Berge's petition for post-conviction relief alleging ineffective assistance of counsel failed to set a prima facie case, in that it failed to demonstrate that he was harmed by his trial attorney's failure.  Id.

### b.  Conclusion

The Court of Appeals reasonably arrived at the conclusion that even if Berge's trial counsel had pressed the judge for a ruling and if the judge had found that Berge had a constitutional right to counsel, that Berge had waived that Sixth Amendment right.  The state court decision was not an unreasonable application of clearly established federal law and thus, not a claim for which federal habeas relief is appropriate.

### V.  RESPONSE TO PETITIONER'S OBJECTIONS TO INITIAL REPORT AND RECOMMENDATION

Having reviewed the Petitioner's Objections (Doc. 118), Respondent's Response to Petitioner's Objections (Doc. 122) and the Petitioner's Reply to Respondent's Response (Doc. 123), the Court declines to modify the Initial Report and Recommendation.

The Petitioner objects that the Court failed to consider his argument that trial counsel provided ineffective assistance by failing to conduct an adequate pre-trial investigation.  (Doc.

37

118 at 2). This claim was in the original petition but was deleted in the amended petition. In the amended petition, Berge attempted to incorporate the original petition by reference however this is insufficient to maintain a claim not specifically stated in the new pleading. See D.Ak. Local Civil Rule 15.1 (party amending a pleading must "reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference.") In addition, Petitioner did not brief the issue in his brief on the merits, further indicating the claim was abandoned.

Petitioner further argues that the Court failed to consider the cumulative impact of trial counsel's errors. (Doc. 118 at 3). Earlier in the litigation, Berge withdrew his claim of cumulative error. On December 4, 2006 (Doc. 55 at 4, responding to Doc. 46), Petitioner withdrew the claim following Respondent's argument that the issue was not exhausted in state court and could result in dismissal of the entire petition (Doc. 46). Petitioner may not withdraw an exhausted claim of cumulative error to prevent dismissal of his habeas petition and then reclaim it later during the litigation. Solis v. Garcia, 219 F.3d 922, 930 (9th Cir. 2000).

This Court carefully considered whether the state court decisions relative to Petitioner's claims 1, 2, 3, 5, 6, 7 and 8 were contrary to or an unreasonable application of clearly established federal law, pursuant to 28 U.S.C. § 2254(d). The state court decisions were sound. Further, Claim 4 was dismissed because the state court decision was based on independent and adequate state law, barring the claim from being the basis for federal habeas relief. See Stewart v. Smith, 536 U.S. 856 at 861. Therefore, it is appropriate for this Court to defer to the state court on all claims.

Finally, the Petitioner argues in his Objections that it is error to fail to conduct an evidentiary hearing in this matter before ruling on his petition. The Petitioner has not established

a valid basis for an evidentiary hearing.  <u>Karis v. Calderon</u>, 283 F.3d 1117, 1126-7 (9th Cir. 2002).  Petitioner must allege facts which, if proven, would entitle him to relief and show he did not receive a full and fair hearing in state court.  He has failed to do this.  <u>See</u> <u>also</u> <u>Hendricks v. Vasquez</u>, 974 F.2d 1099, 1103 (9th Cir. 1992).

## VI.  CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Berge's petition for writ of habeas corpus be DENIED.

DATED this <u>30th</u> day of <u>March</u>, 2011, at Anchorage, Alaska.

/s/ Deborah M. Smith
DEBORAH M. SMITH
United States Magistrate Judge
